Dkt. 5
[REDACTED]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

United States Courts
Southern District of Texas
FILED

MAY - 7 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| Pennantia, LLC, | § | |
| RCM 270, LLC, | § | |
| Lynne Rose, LLC, | § | |
| RCM 245, LLC, | § | |
| Rebekah Rose, LLC, | § | |
| RCM 225, LLC, and | § | |
| Anna Rose, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| *Tank Barge RCM 270* (Official #1257373), | § | Admiralty |
| *Tug LYNNE ROSE* (Official #9753179), | § | |
| *Tank Barge RCM 245* (Official #1050073), | § | |
| *Tug REBEKAH ROSE* (Official #9170688), | § | |
| *Tank Barge RCM 225* (Official #1139764), and | § | |
| *Tug ANNA ROSE* (Official #1139762), their | § | |
| engines, tackle, appurtenances, etc., *in rem*, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF JOSHUA TRUMP IN SUPPORT OF
## EX PARTE MOTION TO FILE PAPERS UNDER TEMPORARY SEAL

I, Joshua Trump, make the following declaration based on my personal knowledge:

1.    I am the managing director of Contrarian Capital Management, LLC ("CCM"), the manager of Carioca Partners, LLC. Carioca Partners, LLC is the owner of approximately ███ of the aggregate beneficial membership interests of Pennantia, LLC ("Pennantia"), one of the plaintiffs in this proceeding.

2.    As explained in the Verified Complaint, this proceeding has been commenced by the Plaintiffs for the purpose of gaining physical access to the *Tank Barge RCM 270* (Official

#1257373), *Tug LYNNE ROSE* (Official #9753179), *Tank Barge RCM 245* (Official #1050073), *Tug REBEKAH ROSE* (Official #9170688), *Tank Barge RCM 225* (Official #1139764), and *Tug ANNA ROSE* (Official #1139762) (the "Vessel Defendants"), as well as various documents, records, and information of the Vessel Defendants, all of which are owned by the Plaintiffs but are managed by Rose Cay Maritime, LLC ("RCM"). The Vessel Defendants are managed by RCM under a ship management agreement between RCM and Pennantia dated August 8, 2021 (the "Ship Management Agreement"), which Ship Management Agreement is annexed to the Verified Complaint as Exhibit 1.

3.      As explained in greater detail in the Verified Complaint, Pennantia purchased approximately half of the fleet of Bouchard Transportation ("Bouchard") when it was sold as part of that company's administration in the U.S. Bankruptcy Court for the Southern District of Texas.

4.      At the time that Pennantia purchased the Bouchard vessels, they each had been out of service for between 12 and 24 months as a result of the financial and managerial difficulties arising out of the Bouchard bankruptcy.

5.      Pennantia's business strategy with respect to the Bouchard vessels was to invest capital in their refurbishment, then ultimately sell them for a profit. In the interim between their refurbishment and their resale to new purchasers, Pennantia intended to operate them on charter.

6.      After significant investments of time and capital in this enterprise – both of which have been greater than anticipated by CCM – Pennantia finally is in a position to capitalize on its investment. Since last October, several different prospective purchasers of some (or all) of the Vessel Defendants have made inquiries as to their availability. As is standard in the industry, part of the due diligence to be carried out by a vessel purchaser is to (a) physically inspect/survey the

2

vessel to be purchased, and (b) conduct a review of the documents, records, and information of the vessel to be purchased.

7.       As explained in greater detail in the Verified Complaint, rather than faithfully carrying out its duties as the manager of the Vessel Defendants, RCM has actively thwarted Pennantia's efforts to market and sell the Vessel Defendants. Pennantia recently has learned that the apparent reason for RCM's behavior is that RCM has an interest in selling the Vessel Defendants to another purchaser for RCM's own benefit.

8.       Specifically, despite numerous requests, RCM is refusing to allow Pennantia – and prospective purchasers – any access to the Vessel Defendants, citing a litany of excuses. Similarly, despite numerous requests, RCM has refused to provide the vast majority of documents, records, and information about the Vessel Defendants needed for prospective purchasers. RCM has acted in this fashion despite being specifically obligated to do so under the Ship Management Agreement.

9.       To obtain the physical access to the Vessel Defendants (and their documents, records, and information) to which Pennantia is entitled without a breach of the peace, Pennantia has sought this Court's assistance through an *in rem* vessel arrest action pursuant to Supplemental Rule D, which action will result in the U.S. Marshal arresting the Vessel Defendants and a substitute custodian (under this Court's orders) being placed in charge of the Vessel Defendants while those vessels are being surveyed and their documents, records, and information being reviewed. While this action is pending, Pennantia presumably would be able to seek this Court's assistance through contempt or other actions should RCM interfere with Pennantia's efforts to consummate the sale of the Vessel Defendants.

3

10.    Unfortunately, the very nature of Pennantia's obtaining this Court's assistance in accessing the Vessel Defendants might well generate adverse publicity regarding marketable title to the Vessel Defendants which would serve RCM's purposes in thwarting the sales of the Vessel Defendants. In essence, Pennantia's "playing by the rules" in seeking this Court's assistance could inure to the benefit of RCM.

11.    For example, should information relating to this dispute become public knowledge to potential purchasers, those purchasers rightly will question whether Pennantia actually would be able to physically deliver the Vessel Defendants to the prospective purchaser.

12.    Similarly, those would-be purchasers learning of this dispute which are not scared off completely from offering to purchase the Vessel Defendants nearly certainly will devalue the Vessel Defendants, reducing the sale value of the Vessel Defendants to a point where Pennantia would not be able to recoup its investment in the Bouchard vessels merely because RCM refused to give Pennantia what it is entitled to under both common law and the Ship Management Agreement – physical access to its property.

13.    To give but one recent example of how this dispute could well become widely publicized, I refer the Court to the heavily-publicized ownership dispute related to the Eletson Holdings Inc. shipping group that currently is playing itself out in the U.S. Bankruptcy Court for the Southern District of New York. True and correct copies of merely a few of many recent news articles relating to the Eletson proceedings are annexed as Exhibit 1. It is well known within the industry that maritime industry publications such as *Tradewinds* and *Lloyd's List* have reporters

4

which specifically review the Courthouse News Service on a daily basis for reports of new maritime disputes that can be reported upon.

14.     All of the above may well come to pass even though Pennantia specifically built into the Ship Management Agreement – at Part II, Clause 30(b) – a "Publicity and Confidentiality" provision to avoid outside parties learning of Pennantia's business contemporaneously:

(b)     Publicity and Confidentiality

(i) Release of information.    Manager [RCM] agrees it will not divulge information concerning this Agreement to anyone without the Owners' [Pennantia's] prior written consent, which shall not be unreasonably withheld, provided that Manager may disclose information as necessary to the appropriate governmental authority in an application for a permit, approval or clearance. *Manager will retain all information belonging to Owners in the strictest confidence and will neither use it nor disclose it to others without the prior written consent of Owners.*    Manager will require any sub consultant engaged by it pursuant to this Agreement to comply with the terms and provisions of this Clause. These requirements will survive the termination or expiration of this Agreement.

(ii) Confidentiality/No Promotion.    Manager agrees that it or its employees may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is proprietary or confidential to Owner. *Any and all non-public information of any form obtained by Manager and its subcontractors, and their respective employees, in the performance of this Agreement will be deemed confidential and proprietary information.*

(iii) Confidentiality.    Each party agrees to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever during the Term of this Agreement and for a period of five (5) years thereafter without the written consent of the other party except as necessary for: (a) the performance of the services under this Agreement; (b) to advise each of its employees who may be exposed to such proprietary and confidential information of their obligations to keep such information confidential; (c) compliance with professional standards of conduct for the performance of the services and/or related matters; (d) compliance with any law, regulation, ordinance, court order or governmental directive or other legal mandate; and/or (e) protection of the parties against claims or liabilities arising from the performance of services under this Agreement.    In the event of any disclosure by a party under subparagraphs (c), (d) or (e), the disclosing party will give the other party fourteen days advance notice of such disclosure.    This obligation will not apply to information previously in a party's possession or in the public domain, or

5

information lawfully acquired on a non-confidential basis from others. This provision will survive termination of this Agreement.

(iv)Manager agrees that it will review the terms and conditions of Clause 30(b) of this Agreement with all subcontractors it engages and that it will obtain the written agreement of each subcontractor to comply with the terms of this Clause.

*See* Verified Complaint, Exhibit 1 (Ship Management Agreement), Part II, Clause 30(b) (emphasis added).

15.    To avoid the commencement of this lawsuit potentially "poisoning the well' relating to sales of some (or all) of the Vessel Defendants, Pennantia respectfully requests that this Court keep the documents filed in this proceeding under seal until further order of this Court. To provide comfort to the Court as to what this may entail, Pennantia does not anticipate significant other filings in this proceeding by either Plaintiffs or the Vessel Defendants. This proceeding intentionally is limited to Plaintiffs seeking physical access to the Vessel Defendants and their records, documents, and information – nothing else. The only filing that conceivably could be filed in opposition one which seeks to preclude access to the Vessel Defendants and/or their records, documents, and information. Hence, the extent of the documents and information under seal would be limited.

16.    Furthermore, Pennantia intends for the temporal scope of the sealing order likewise to be limited in nature. As mentioned above, Pennantia's primary concern is that public notice of this lawsuit would harm Pennantia's ability to complete the sale of the Vessel Defendants which well may be imminent should the current interested purchasers obtain the needed physical access to the Vessel Defendants as well as their records, documents, and information. Once the sale of the Vessel Defendants is consummated, which Pennantia estimates would take place in approximately six weeks, Pennantia will file a motion with this Court to unseal the documents

6

filed with this Court and file for public viewing – with suitable redactions to keep confidential proprietary information out of the public eye – all of the documents filed in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Greenwich, Connecticut on May 7, 2025.

_____
Joshua Trump

# EXHIBIT 1

Home (https://financialregnews.com/) » News (https://financialregnews.com/news/) » Eletson bankruptcy judge hands shipping company and Reed Smith latest blow as Chapter 11 plan progresses

# Eletson bankruptcy judge hands shipping company and Reed Smith latest blow as Chapter 11 plan progresses

BY FINANCIAL REGULATION NEWS REPORTS | FEBRUARY 4, 2025 | FEATURED (HTTPS://FINANCIALREGNEWS.COM/FEATURED/)

In the most recent signal that the legal challenge to Eletson Holdings Inc.'s Chapter 11 plan may be running out of options, Reed Smith LLP, Eletson's former legal counsel, and the bankrupt shipping company's former shareholders, officers and directors were ordered by a New York bankruptcy judge on Jan. 24 to comply with its Chapter 11 plan.

The judge overseeing the shipping company's Chapter 11 case in New York's Southern District, John P. Mastando III, ordered former Eletson shareholders to take "all steps reasonably necessary" to assist the reorganized company in amending or updating corporate governance documents within seven days of the court's Jan. 24 ruling.



Judge Mastando warned that failure to do so would result in a hearing "on short notice" to determine whether any actions were taken to interfere with the implementation of Eletson's Chapter 11 plan. Mastando made it clear that the confirmed reorganization plan put new owners in control of the company and the former board of directors ceased to exist.



Reorganized Eletson Holdings had filed a motion for an order imposing sanctions on Eletson's former shareholders, officers, directors, and former debtor counsel Reed Smith for failure to comply with the Chapter 11 plan terms. Eletson said in court documents that its former owners, subsidiaries, affiliates, and personnel including directors and officers, principals, attorneys, and other professionals "attempted to subvert the confirmation order." The official committee of unsecured Eletson creditors filed a statement of support for Eletson's motion to sanction the company's former owners and their attorneys.

Eletson's case has been led by Louis M. Solomon of Reed Smith. According to Reed Smith's website, Mr. Solomon is the firm's Head of International Litigation (US). His listed practice areas focus on international litigation, trials, and complex commercial disputes, with no explicit mention of restructuring as a primary area of practice. Reed Smith's erratic litigation strategy failed to withstand judicial scrutiny.

Reed Smith most recently drew criticism in the court for failing to update certain corporate governance documents to transfer ownership to the rightful owners of Eletson in Liberia and for filing baseless litigation against the company's new owners using the debtor's funds and resources that was deemed a collateral attack on U.S. court orders.

Reorganized Eletson also asked the judge to compel the debtors and their counsel, Reed Smith, to comply with the confirmation order and effectuate the Chapter 11 plan by updating the Liberian International Ship and Corporate Registry to reflect the reorganized company as the new owner of the reorganized debtor.

Eletson's reorganization plan was approved by the U.S. Bankruptcy Court for the Southern District of New York on Oct. 25, 2024. Eletson announced on Nov. 19 that it completed its restructuring and emerged from Chapter 11 protection.

In Friday's hearing, Judge Mastando reiterated to the court that the confirmation order recognizes a new board of Eletson Holdings Inc. and the new board of directors can take whatever actions it deems appropriate on behalf of Eletson. Despite the confirmation order, former debtor counsel Reed Smith has refused "to exercise their corporate authority to effectuate the transfer of ownership the plan requires," according to a transcript of the Jan. 24 court hearing.

Eletson's restructuring plan gave control of the reorganized company to petitioning creditors led by Pach Shemen LLC. Adam Spears was appointed the reorganized company's new chief executive. New members of Eletson's board include Spears, Leonard Hoskinson, and Timothy Matthews.

In Friday's court hearing, the judge overseeing the case pointed out to the court that Eletson's Chapter 11 plan became effective on Nov. 19, 2024. And, "pursuant to the plan the Reorganized Eletson Holdings was created, and the former board was dissolved and terminated." Also, Judge Mastando noted that on the effective date, Reed Smith's representation of Eletson Holdings was terminated. "The confirmation order

and the Chapter 11 plan are binding on the former debtor's counsel as these parties actively appeared and participated in the bankruptcy case," the judge said. "These parties availed themselves of the Bankruptcy Court and are subject to enforcing the confirmation order and Chapter 11 plan."

Eletson is the parent company of subsidiaries that own and operate a fleet of medium-range double-hull product tankers that carry refined petroleum products.

The shipping company's bankruptcy is rooted in a dispute over Eletson Gas, a liquefied petroleum gas shipping venture that was the result of Eletson's partnership with Blackstone Tactical Opportunities. Blackstone sold its preferred shares in the venture in November 2021 to Murchinson, an alternative investment management firm. The shares were held in a special purpose entity created by Murchinson that was called Levona Holdings Ltd. After Levona acquired the shares, Levona and Eletson began negotiating how the debtors could buy the shares back; while there was a binding offer letter in Feb. 2022, a dispute arose which led to an arbitration. At the same time Murchinson and Lenova negotiated to buy a majority of $300 million in debt with noteholders who had not received interest payments since 2018. Murchison formed a special purpose vehicle, Pach Shemen, in December 2022 to hold the new notes which were officially acquired in January 2023.

In March 2023 Pach Shemen and other entities filed an involuntary Chapter 7 bankruptcy against the debtor which was converted to a voluntary Chapter 11 in September 2023.

The dispute between Eletson and Levona has its roots in a 2022 agreement in which Levona provided cash to ensure five of the shipping company's 14 vessels would not be seized by creditors. As part of the agreement Levona held preferred interests that Eletson could buy back. The dispute, which went into arbitration, was over whether Eletson executed its option to buy the interests in a timely fashion. The shipping company said it did so within 30 days of a Feb. 22, 2022, deadline. The dispute flared up when Levona tried to sell nine of Eletson's ships to a competitor.

The pivotal question in arbitration was whether Eletson had exercised its right to buy the preferred interests in the company. Arbitration ruled in Eletson's favor but Levona learned about relevant documents contradicting it had exercised the purchase option. The documents were not shared in the arbitration proceedings even though the process required both parties to share all relevant documents.

From March 2024 until June 2024 Levona fought for relief from the bankruptcy court's protective order so they could present the documents to the court.

According to a Sept. 6, 2024, order and opinion from U.S. District Judge Lewis J. Liman, during the arbitration when Levona presented evidence the purchase option had not been exercised in the form of a July 13 email where Eletson's CFO sent a buyout proposal, "Eletson lied about it." And, "Eletson also withheld documents necessary to establish the purchase option had not been exercised," according to Liman's opinion and order.

Liman noted further that "Eletson constructed extraordinary obstacles to prevent Levona uncovering its fraud. Levona time and again asked for the documents that might show that Eletson had withheld material evidence from the arbitrator. And Eletson time and time again engaged in efforts to frustrate Levona from obtaining that evidence."

The judge also chastised Eletson for making meritless and "arguably frivolous arguments that the documents were not relevant" to the proceedings.

← SEC approves Intercontinental Exchange's ICE Swap Trade application (https://financialregnews.com/sec-approves-intercontinental-exchanges-ice-swap-trade-application/)
Majority of U.S companies experienced cyber fraud in 2024, research finds → (https://financialregnews.com/majority-of-u-s-companies-experienced-cyber-fraud-in-2024-research-finds/)

## Receive Weekly News Summary

First Name *

Last Name *

Email Address *

Organization

SUBSCRIBE!

## Cannabis Banking

New York State hits $1B in cannabis retail sales (https://financialregnews.com/new-york-state-hits-1b-in-cannabis-retail-sales/)

AICPA makes recommendations to IRS on cannabis businesses in advance of marijuana reclassification (https://financialregnews.com/aicpa-makes-recommendations-to-irs-on-cannabis-businesses-in-advance-of-marijuana-reclassification/)

CTrust launches credit scoring platform for cannabis businesses (https://financialregnews.com/ctrust-launches-credit-scoring-platform-for-cannabis-businesses/)

Senators push for legal cannabis businesses to have SBA access (https://financialregnews.com/senators-push-for-legal-cannabis-businesses-to-have-sba-access/)

Delaware to consider bill protecting financial businesses serving legal marijuana industry .ttps://financialregnews.com/delaware-to-consider-bill-protecting-financial-businesses-serving-legal-

marijuana-industry/)

## Digital Currency

Sen. Lummis introduces bill to establish strategic Bitcoin reserve (https://financialregnews.com/sen-lummis-introduces-bill-to-establish-strategic-bitcoin-reserve/)

Senators introduce bill to establish regulatory framework for payment stablecoins (https://financialregnews.com/senators-introduce-bill-to-establish-regulatory-framework-for-payment-stablecoins/)

Rep. Hill urges SEC chair to remove hurdles for digital asset ecosystem (https://financialregnews.com/rep-hill-urges-sec-chair-to-remove-hurdles-for-digital-asset-ecosystem/)

OCC reaffirms permissible cryptocurrency activities for banks (https://financialregnews.com/occ-reaffirms-permissible-cryptocurrency-activities-for-banks/)

Legislation to benefit crypto currencies passes out of House committee (https://financialregnews.com/legislation-to-benefit-crypto-currencies-passes-out-of-house-committee/)

## Most Read Last 7 Days

Bipartisan Senate coalition moves to crack down on pharmacy benefit managers pricing practices (https://financialregnews.com/bipartisan-senate-coalition-moves-to-crack-down-on-pharmacy-benefit-managers-pricing-practices/)

Bipartisan bill would increase access to capital for small businesses (https://financialregnews.com/bipartisan-bill-would-increase-access-to-capital-for-small-businesses/)

Visa unveils new department to mitigate scams (https://financialregnews.com/visa-unveils-new-department-to-mitigate-scams/)

Rep. Perry seeks to repeal tax credit for carbon capture and sequestration (https://financialregnews.com/rep-perry-seeks-to-repeal-tax-credit-for-carbon-capture-and-sequestration/)

ᵃn. Lummis introduces bill to establish strategic Bitcoin reserve (https://financialregnews.com/sen-.ummis-introduces-bill-to-establish-strategic-bitcoin-reserve/)

ICBA is urging federal policymakers to end tax subsidies for credit unions (https://financialregnews.com/icba-is-urging-federal-policymakers-to-end-tax-subsidies-for-credit-unions/)

Reps. Feenstra, Craig introduce bill to enhance crop insurance protections (https://financialregnews.com/reps-feenstra-craig-introduce-bill-to-enhance-crop-insurance-protections/)

Legislation introduced to lower housing costs, address housing crisis (https://financialregnews.com/legislation-introduced-to-lower-housing-costs-address-housing-crisis/)

Reps. Ocasio-Cortez, Luna introduce bill to cap credit card interest rates at 10 percent (https://financialregnews.com/reps-ocasio-cortez-luna-introduce-bill-to-cap-credit-card-interest-rates-at-10-percent/)

The SEC extends the compliance dates for its "names rule" (https://financialregnews.com/the-sec-extends-the-compliance-dates-for-its-names-rule/)

## News Archive

| 2025 | 2024 | 2023 | 2022 | 2021 | 2019 | 2018 | 2017 | 2016 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

Copyright © 2025 Financial Regulation News. All Rights Reserved.

LAW    See all articles

LATEST JOBS    **Dry Bulk Chartering Broker**                    **Fleet Operator**



The 35,000-cbm LPG carrier Symi (built 2012) featured in a dispute between Eletson and Murchinson. Photo: Brian Kushner

## Eletson appeals bankruptcy judge's order and gains a win in Greek courts

Battle could be brewing between legal authorities in New York and Athens over private owner's future

10 February 2025 12:59 GMT   *UPDATED 12 February 2025 8:04 GMT*
By **Joe Brady**   in  **Stamford**

A long and bitter legal battle between the legacy owners of Greece's Eletson Holdings and a Toronto hedge fund seeking to gain control of the company seems to be growing more complex by the day.

The incumbent managers are now appealing against an order from a US bankruptcy judge that they in effect hand over control to representatives of the hedge fund, Murchinson.

You need a subscription to read this story

# Stay a step ahead on shipping news

Save 95%

**Introductory offer**

Save over 95% on your first month and enjoy instant access

## 4 weeks for $4*

**Digital Annual subscription**

Get 12 months of full digital access to TradeWinds

## $1446*/ year

Subscribe now

*4 USD / 4 EUR / 4 GBP / 40 NOK
Auto-renews at $143/month unless cancelled. New customers only.

Subscribe now

*1184 EUR / 901 GBP / 10918 NOK / 1446 USD
Equal to $120.50/month. Auto-renews annually unless cancelled.

**Please note:** If this article is older than 2 weeks, you will need premium access to read it. Our introductory offer provides only basic access. See more subscription options or explore our group subscriptions.

Pay with   VISA 

## TRENDING TODAY

**Insurance**



### Judge orders six managers of Baltimore boxship disaster to travel to US

**Shipbroking**



### 'Star broker' Andi Case's pay package tops £12m at Clarksons after record year

**Regulation**



### VLCC crew left adrift without fuel after sanctioned tanker abandoned for third time in two years

dn media group   TradeWinds is part of DN Media Group. To read more about DN Media Group, click here

# LAW   <u>See all articles</u>

LATEST JOBS   **Post Fixtures Officer**                          **Vessel Operator**



The skyline of Toronto, home to hedge fund Murchinson and principal Marc Bistricer. Photo: Bloomberg

## Death threat? How Eletson legal battle just got uglier

Vasillis Kertsikoff tells judge of 'photo of a grave' while Murchinson cites 'desperate act of fabrication'

27 February 2025 11:57 GMT   *UPDATED 27 February 2025 20:42 GMT*
By **Joe Brady**   🔔   in  **Stamford**

A bitter legal fight that already contained counterclaims of bribery and fraud has moved to another level.

Longtime Eletson Corp chief executive Vasillis Kertsikoff has told a US federal bankruptcy court in New York that he has received a death threat from the backer of a Toronto hedge fund who is fighting him for control of the private Greek shipowner.

You need a subscription to read this story

# Stay a step ahead on shipping news

Save 95%

**Introductory offer**

Save over 95% on your first month and enjoy instant access

## 4 weeks for $4*

Subscribe now

**Digital Annual subscription**

Get 12 months of full digital access to TradeWinds

## $1446*/ year

Subscribe now

*4 USD / 4 EUR / 4 GBP / 40 NOK
Auto-renews at $143/month unless cancelled. New customers only.

*1184 EUR / 901 GBP / 10918 NOK / 1446 USD
Equal to $120.50/month. Auto-renews annually unless cancelled.

**Please note:** If this article is older than 2 weeks, you will need premium access to read it. Our introductory offer provides only basic access. See more subscription options or explore our group subscriptions.

Pay with    VISA    ⬤

## TRENDING TODAY




### Judge orders six managers of Baltimore boxship disaster to travel to US




### VLCC crew left adrift without fuel after sanctioned tanker abandoned for third time in two years



### 'Desperate situation': joined-up action needed after kidnapping of 10 tanker crew members, ITF says

dn media group   TradeWinds is part of DN Media Group. To read more about DN Media Group, click here



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Ex-Eletson Owners Face $5K Daily Fine For Ch. 11 Challenge

**By Rick Archer**

Law360 (March 12, 2025, 4:16 PM EDT) -- A New York bankruptcy judge on Wednesday ordered the prebankruptcy shareholders of Greek shipping group Eletson Holdings to end their opposition to overseas recognition of the company's Chapter 11 plan or pay $5,000 a day in fines.

In a bench ruling, U.S. Bankruptcy Judge John P. Mastando III found the former Eletson shareholders, as well as the company's provisional board, in contempt for what he called "obstructionist" behavior. However, the judge declined to issue sanctions that Eletson's new owners requested against counsel for the old owners and the board, including attorneys from Reed Smith LLP.

Since Judge Mastando **approved an equity-swap plan** for the debtor in October, the case has been **mired in disputes** between former creditors that became Eletson's new owners and the prebankruptcy equity holders and the provisional board of directors, which a Greek court appointed.

The provisional board has argued it controls Eletson subsidiaries and is legally barred from taking actions demanded by the new shareholders, including updating the company's address with the Liberian International Ship and Corporate Registry.

Such changes cannot be made until the new owners are recognized as such by courts in Greece and Liberia, the board said. Meanwhile, the new owners contended that the plan confirmation in the U.S. put them in control of the shipping company and that the provisional board is deliberately stalling.

In January, Judge Mastando issued an order enforcing the confirmation order, and last week, he **denied the board's request** for a stay pending its appeal, saying the provisional board is not being asked to violate foreign law and that the new owners control Eletson.

The reorganized Eletson urged the New York bankruptcy court to enter a contempt finding and issue $50,000-a-day fines against the provisional board, two groups of former Eletson shareholders — a majority stake group and a minority interest group — and their counsel.

Kyle Ortiz, an attorney representing Eletson, said that while the plan called for all parties to cooperate with the reorganization effort, the former minority shareholders sought the appointment of the provisional board in November, after the plan was confirmed, with the express purpose of challenging the confirmation.

Since then, Ortiz told the court, the shareholders and the board have argued that the plan can't go into effect until it is recognized in Greek and Liberian courts, while opposing the reorganized Eletson's attempts to seek recognition of its plan.

"We are well into the realm of farce, Your Honor," he said.

Ortiz also argued in favor of sanctions against Reed Smith, which is representing the provisional board and the former equity holders in the U.S. appeals of the plan confirmation.

Reed Smith's counsel, Louis Solomon, said the law firm is not involved in the overseas cases and there is no evidence the firm is involved in planning the Eletson board's overseas legal strategy.

"These are just irresponsible words of counsel," Solomon said.

Counsel for the former majority shareholders said none of them are parties to the overseas actions, and that they have no way to end them, but Judge Mastando found they did file papers opposing Liberian recognition and joined in opposition to Greek recognition. They were also capable of "influencing or attempting to influence" the provisional board or the minority interest group, but had not done so, the judge said.

He also said the overseas filings violated the terms of the plan and included "collateral attacks" on his confirmation order, with the parties contending that the bankruptcy was filed in bad faith and that the bankruptcy judge had no jurisdiction.

The case has been contentious since the company was placed in Chapter 7 liquidation in March 2023 by a group of creditors that alleged Eletson had fallen behind on repaying $354 million in debt. The debtor had long argued its bankruptcy was orchestrated by Canadian investment firm Murchinson Ltd. to gain advantage in litigation over the ownership of a $700 million liquefied natural gas joint venture.

The case was converted to Chapter 11, and three competing reorganization plans were filed. In October 2024, Judge Mastando concluded that the plan proposed by Eletson was unconfirmable, and approved the plan proposed by the Chapter 7 petitioning creditors, giving majority ownership of Eletson to Pach Shemen LLC, an affiliate of Murchinson.

The debtor is represented by Kyle J. Ortiz, Brian F. Shaughnessy, Bryan M. Kotliar, John C. McClain and Jared C. Borriello of Togut Segal & Segal LLP.

Reed Smith is represented in-house by Louis M. Solomon.

The former majority shareholders of Eletson Holdings Inc. are represented by William E. Curtin, Duston K. McFaul and Robert S. Velevis of Sidley Austin LLP.

The case is In re: Eletson Holdings Inc. et al., case number 1:23-bk-10322, in the U.S. Bankruptcy Court for the Southern District of New York.

--Additional reporting by Emily Lever and Vince Sullivan. Editing by Covey Son.

For a reprint of this article, please contact reprints@law360.com.

© 2025, Portfolio Media, Inc.

**Related Info**

View Article on Law360

Add to Briefcase

Case Information

Law Firms

Companies

Government Agencies

**Discover More**

Related Articles ❯

Editorial Contacts 🗗

Rights/Reprints

All Content © 2025, Portfolio Media, Inc.